UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JERRY L. HUNTER, | ) | |
| Plaintiff, | ) | No. 1:10-cv-00021 |
| | ) | Judge Campbell |
| v. | ) | |
| LES HELTON | ) | |
| and SABRINA PATTERSON, | ) | |
| Defendants. | ) | |

**M E M O R A N D U M**

The plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate in the Marshall County Jail in Lewisburg, Tennessee. He brings this action under 42 U.S.C. § 1983 against Marshall County Sheriff Les Helton and Marshall County Jail Administrator Sabrina Patterson claiming that they deprived him of his rights under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

The plaintiff's claims concern conditions at the Marshall County Jail and events he alleges occurred while he has been held at the jail as a pre-trial detainee.[1] The plaintiff seeks compensatory and punitive damages and an injunction requiring improved conditions at the Marshall County Jail.

---

[1]The Eighth Amendment's prohibition against cruel and unusual punishment applies to pre-trial detainees through the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16 (1979); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). However, claims brought by pretrial detainees challenging conditions of confinement are analyzed under the Eighth Amendment. *See Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994).

1

## I. Prison Litigation Reform Act Standard

Under the Prison Litigation Reform Act (PLRA), the courts are required to dismiss a prisoner's complaint if it is determined to be frivolous, malicious, or if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b). Although the courts are required to construe *pro se* pleadings liberally, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), under the PLRA, the "courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal." *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

## II. Section 1983 Standard

Plaintiff Hunter alleges a host of claims under § 1983. To state a claim under § 1983, the plaintiff must allege and show: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The plaintiff brings claims against defendants Marshall County Sheriff Les Helton and Marshall County Jail Administrator Sabrina Patterson in their individual and official capacities. "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity" of which the official is an agent. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the plaintiff's claims against defendants Helton and Patterson in their official capacities are claims against Marshall County,

Tennessee. Governmental entities cannot be held responsible for a constitutional deprivation, unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 442 (6th Cir. 2000).

### III.     Analysis of Section 1983 Claims

#### A.     Denial of access to newspapers and news media (Claim 1)

For his first claim, the plaintiff alleges that the Marshall County Jail maintains a policy of prohibiting inmates from access to newspapers and to any "news media" at all (television, radio, etc.) while incarcerated at the jail, and that this policy violates his First Amendment right under the United States Constitution.

It is well settled that a "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). These rights include the right to receive mail, including publications, subject to legitimate penological interests. *Sheets v. Moore,* 97 F.3d 164, 166 (6th Cir.1996) (citations omitted). "[R]egulations affecting the sending of a 'publication' ... to a prisoner must be analyzed under the *Turner [v. Safley,* 482 U.S. 78 (1987)] reasonableness standard" to determine whether they are reasonably related to legitimate penological interests. *Sheets,* 97 F.3d at 166 (citing *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989)). The factors to be applied in determining whether the reasonableness standard is met are: whether the governmental objective underlying the regulation is legitimate and neutral and whether the regulation is rationally related to that objective; whether inmates have alternative means of exercising the right; and the impact that accommodation of the asserted right will have on inmates

and guards in the prison. *Abbott,* 490 U.S. at 414-418. With regard to publications in the prison context, "neutrality" means "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Id.* at 415 (citing *Procunier,* 416 U.S. 396, 413). Legitimate penological interests include security, order, and rehabilitation. *Procunier,* 416 U.S. at 413.

Liberally construing the *pro se* complaint's allegations, the plaintiff alleges that the defendants acted according to an unconstitutional policy or custom attributable to Marshall County, Tennessee, and that the defendants authorized, acquiesced in, and/or personally implemented that policy. The plaintiff's complaint specifically alleges that he has put the defendants on "formal notice" of this alleged constitutional violation. On initial review, the record before the Court is sparse; as such, the Court is without information concerning the rationale undergirding the Marshall County Jail's policy of prohibiting media and newspaper, if such a policy exists as the plaintiff alleges. Nevertheless, the Court finds that the plaintiff has stated a colorable claim under the First Amendment with regard to Claim 1 of his complaint.[2]

### B. No regular exercise/no regular outdoor recreation (Claim 2)

---

[2]*See Marcum v. Jones,* 2009 WL 3172048, at **2-3 (S.D. Ohio 2009)(denying defendants' summary judgment motion as to prisoner-plaintiff's First Amendment claim premised on jails' "no publications policy," which prohibited inmates from receiving any publications, magazines, tabloids, and newspaper through the mail while incarcerated at the jails); *Dunne v. Smith*, 2009 WL 840651, at **4-5 (E.D. Cal. 2009)(finding that prisoner-plaintiff stated a colorable First Amendment claim premised on the prison's ban of magazines and newspapers); *see also Beard v. Banks*, 548 U.S. 521 (2006)(finding that the prison's policy of restricting access to newspapers, magazines, and photographs by inmates placed in most restrictive level of prison's long-term segregation unit was justified by need to provide particularly difficult prisoners with increased incentives for better prison behavior, and thus did not violate the First Amendment rights of such prisoners).

4

The plaintiff alleges that inmates are allowed outside for the purpose of exercise and exposure to fresh air and sunshine only "once or twice a month" (Compl. at pp. 3-4) and that some inmates have not been allowed outside for four months (Amend. Compl. at p. 2). The plaintiff alleges that he is suffering frequent nose bleeds due to the high moisture content in the jail and the lack of fresh air. (Amend. Compl. at p.2). He contends that the jail's policy of not allowing inmates the opportunity to exercise and be outdoors on a consistent basis violates his rights under the Eighth Amendment.

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)(collecting cases). An Eighth Amendment conditions of confinement claim has two elements. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal quotation marks and citations omitted). Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter,* 501 U.S. 294, 302-03 (1991)).

The amount of exercise that an prisoner is provided need only comport to the "'minimal civilized measure of life's necessities.'" *Walker v. Mintzes,* 771 F.2d 920, 927 (6th Cir. 1985) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). A total denial of recreational opportunities may violate the Constitution. *See Walker,* 771 F.2d at 927-28. Although the Sixth Circuit has not defined a minimum standard for recreation for adult prisoners, in its opinion in *Rodgers v. Jabe*, 43 F.3d 1082, 1087-1088 (6th Cir. 1995), the Court strongly suggests that five (5)

5

hours a week is the constitutional minimum. Furthermore, the deprivation of sunshine and fresh air may violate the Eighth Amendment. *See Comer v. Stewart*, 215 F.3d 910, 916 (9th Cir. 2000); *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995).

Construing the *pro se* complaint liberally, the plaintiff contends that the defendants authorized, acquiesced in, and/or implemented the alleged unconstitutional policies prohibiting the plaintiff from outdoor exposure and exercise more than once or twice a month. As such, the Court finds that the plaintiff has stated a colorable conditions of confinement claim under the Eighth Amendment.

### C. Handling of incoming and outgoing inmate legal mail (Claim 3)

The plaintiff alleges that inmate legal mail concerning claims against or conditions at the Marshall County Jail is often "lost, destroyed, stolen" or "simply just thrown away." (Compl. at pp. 4-5). He seeks permanent injunctive relief preventing correctional officers and trustee inmates from passing, collecting, and delivering the plaintiff's mail. (Docket No. 3). Since filing his initial complaint, the plaintiff has submitted multiple letters (*see* Docket Nos. 10, 11, 19) expressing his concern that he has not received legal mail from the Court and that his legal mail to the Court has not been delivered properly.

A prisoner's right to receive mail, including legal mail, is protected by the First Amendment. *Muhammad v. Pitcher*, 35 F.3d 1081, 1984-85 (6th Cir. 1994)(citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992))(internal quotation marks omitted). Legal mail is defined as mail received from elected officials and government agencies, including the courts. *See Muhammad*, 35 F.3d at 1083. Generally speaking, to be considered legal mail, such mail must be "properly and clearly marked" as such. *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996). However, there is no requirement for mail

6

received by prisoners from the courts to be marked as containing confidential materials. *See e.g., Boswell v. Mayer*, 169 F.3d 384, 389 (6th Cir. 1999). A policy of a prison or a jail to open legal mail outside of a prisoner's presence is unconstitutional. *Muhammad*, 35 F.3d at 1086.

Here, the plaintiff alleges that a policy exists at the jail to block or censor outgoing mail by inmates if it contains allegations concerning the jail or county. (Docket No. 14). He has submitted grievances he filed at the jail concerning an incident on March 12, 2010, when a jail correctional officer opened legal mail he had addressed to the Court, related to this case, outside of his presence and without his knowledge or permission. (Attachs. to Docket No. 5). *See Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1986)(referring to a prisoner's right to protect the contents of legal correspondence as a "fundamental right"). The plaintiff also alleges that a policy exists that incoming legal mail to inmates should be delayed or destroyed. The Court finds that the plaintiff has stated a colorable claim under the First Amendment with regard to Claim 3 of the complaint. [3]

### D. Forced exposure of inmates' person to visitors (Claim 4)

The plaintiff alleges that, due to the defective design of the Marshall County Jail and the method of visitation between inmates and visitors, certain inmates' visitors can observe, via television monitors, other inmates who are showering, urinating, or defecating. The plaintiff

---

[3]*See Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003)(when a prisoner's incoming mail is legal mail, there is a heightened concern with allowing prison officials unfettered discretion to open and read such mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts; further, correspondence to a state prisoner from a court constituted legal mail, implicating a prisoner's First Amendment rights); *see also Coleman v. Bowerman*, 2010 WL 1247397, at ** 4-5 (W.D. Mich. Mar. 25, 2010)(applying *Sallier* and denying defendant's summary judgment motion as to prisoner's claim that the defendant prison guard improperly opened the plaintiff's legal mail outside of his presence).

contends that this forced exposure has resulted in many fights between inmates. The plaintiff states that, of the fifteen (15) housing pods at the Marshall County Jail, ten (10) housing pods are affected by this design flaw.

To the extent that the plaintiff is seeking to assert claims on behalf of visitors to the jail, he lacks standing to do so. However, to the extent that the plaintiff asserts that his Eighth Amendment rights are violated by having to expose his person to visitors while showering or performing bodily functions, he has stated a colorable claim.[4]

### E. Noise level (Claim 4a)

The plaintiff alleges that the Marshall County Jail resembles a "catacomb" and, as such, the echoing effect of the structure causes inmates to be exposed to excessive noise. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. 337, 348. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Constitutionally adequate housing is not denied simply by uncomfortable temperatures inside cells, unless it is shown that the situation endangers an inmates' health. Similarly, high levels of noise are not, without more, violations of the Eighth Amendment." *Grubbs v. Bradley*, 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982). As such, the plaintiff's claim that the excessive noise level at the Marshall County Jail violates the Eighth Amendment fails.

### F. Denial of access to the courts (Claim 5)

---

[4] It is unclear from the plaintiff's complaint whether he is housed in one of the ten affected housing pods.

8

The plaintiff alleges that the law library at the Marshall County Jail is inadequate and outdated such that it prevents prisoners from being able to represent themselves in any meaningful way.

The law is well settled that a prisoner has a First Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-823 (1977). The right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." *Id.* at 822. To ensure the meaningful exercise of this right, prison officials are under an affirmative obligation to provide inmates with access to an adequate law library, *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985), or some alternative form of legal assistance, *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)(overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401 (1989)). Meaningful access varies with the circumstances, and prison officials are accorded discretion in determining how that right is to be administered. *Bounds,* 430 U.S. at 830-31. However, it is not enough for plaintiff simply to claim that he was denied access to the courts, or that he did not have access to an adequate law library or to some alternate form of legal assistance. To state a claim on which relief may be granted, plaintiff must show that a defendant's conduct in some way prejudiced the filing or prosecution of a legal matter. *Walker*, 771 F.2d at 932; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

In this case, the plaintiff has not alleged that any defendant's conduct prejudiced his filing or prosecution of a legal matter. *Id.* Indeed, despite the conduct about which the plaintiff complains, he successfully has filed a complaint and an amended complaint in this matter. As such, the

9

plaintiff fails to state claims that are actionable under the First Amendment for the denial of access to the courts. Accordingly, those claims will be dismissed.

### G. Inmate food handlers (Claim 6)

The plaintiff asserts that the Marshall County Jail employs four inmates to prepare the food at the jail, and these inmates "are not required [to undergo] a physical or made to shower each morning before handling inmates [sic] food." (Docket No. 1, ¶ 30, p.8). As a result, the plaintiff alleges that "any of these said food handlers could have x-amount of infectious diseases." (Docket No. 1, ¶ 31, p.9). According to the plaintiff, he put staff members at the Marshall County Jail "on formal notice of this claim, all to no avail." (Docket No. 1, ¶ 33, p.9). He contends that, as a result, the inmates' lives are "in grave danger[,]" presumably due to the possibility that they will contact an infectious disease from an inmate food handler. (Docket No. 1, ¶ 32, p.9).

The Eighth Amendment is implicated when a prison official is deliberately indifferent to a living condition which poses a substantial risk of serious harm to an inmate. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An Eighth Amendment claim has both an objective and subjective component. *Farmer*, 511 U.S. at 834. The objective component requires the plaintiff to show a "sufficiently serious" deprivation. *Id.* According to the United States Supreme Court, determining whether a condition of confinement meets the objective factor of the Eighth Amendment test

> requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Hall v. Jarrigan*, No. 2:07-CV-127, 2008 WL 5377893, at *5 (E.D. Tenn. Dec. 18, 2008)(quoting

10

*Helling v. McKinney*, 509 U.S. 25, 26 (1993)).

Here, the plaintiff alleges that, because the inmate food handlers are not required to undergo a physical prior to their assignment to kitchen detail and/or to take showers every day prior to handling food and serving food to inmates, he is in grave danger of being exposed to any number of infectious diseases. As the Seventh Circuit has noted, "[m]any Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Id.* (citing *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001)).

The Court finds that, absent additional allegations not set forth by the plaintiff herein, the failure to require inmate food handlers to shower every day or to undergo a physical examination prior to their assignment to kitchen detail does not violate contemporary standards of decency by exposing the plaintiffs to risks that society is unwilling to tolerate. Notably, the plaintiff has not alleged that any of the four inmate food handlers at the Marshall County Jail mentioned in his Complaint are – in fact – infected with communicable diseases or infections which pose a risk of harm to inmates who consume the food and drinks. Neither has the plaintiff alleged that he has suffered a physical injury as a result of the alleged unsanitary procedures employed by the kitchen staff. *See Catanzaro v. Mich. Dep't of Corrs.,* No. 08-11173, 2009 WL 2154921, at *4 (E.D. Mich. July 14, 2009)*(*"while the plaintiffs make generalized claims about unsanitary prison kitchen conditions, and assert that these conditions are likely to cause the spread of communicable diseases, they do not themselves establish that, as a result of allegedly unconstitutional prison conditions, they have been injured."); *Hall,* 2008 WL 5377893, at *5 (allegation that the prisoner who serves drinks is denied sanitary gloves fails to state a constitutional claim "absent some indication that the food

11

or drink itself is unsanitary or that the server has a medical condition which poses a risk of harm to inmates who consume the food and drinks"); *Carmony v. County of Sacramento*, 2008 WL 435343, at *11 (E.D. Cal. Feb.14, 2008); *Jackson v. St. Clair County Jail*, 2005 WL 1827873, *4 (S.D. Ill. Aug. 2, 2005) (allegation that inmate food servers do not wear gloves while handling food, absent an indication of physical injury, fails to state a constitutional claim); *Tapia v. Sheahan*, 1998 WL 919709, at *5 (N.D. Ill. Dec. 30, 1998) (contention that food servers fail to wear gloves or hairnets fails to state a claim). As such, this claim fails.

### H. Dispensing of inmate medication (Claim 7)

The plaintiff contends that the defendants are allowing employees who are neither licensed nor bonded to dispense prescription medications to inmates, and this practice violates Tennessee law. Violations of state law are not actionable under § 1983, and "[s]tate rather than federal courts are the appropriate institutions to enforce state rules." *Pyles v. Raisor*, 60 F.3d 1211, 1216 (6th Cir. 1995)(quoting *Archie v. Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989). Thus, this claim fails.

### I. Forced exposure of inmates' person while showering to female guards (Claim 8)

The plaintiff contends that, while showering, his naked body is observable by female correctional officers while they are monitoring the security cameras in the inmate shower area. He contends that forcing inmates to expose themselves to the opposite sex while showering is a violation of his Eighth Amendment rights.

The Sixth Circuit has recognized a legitimate interest in providing equal employment opportunities to women and a security interest in deploying available staff effectively. *Harris v. Caruso*, 2006 WL 2521403, at *8 (W.D. Mich. Aug. 30, 2006). As one court explains: "Our

12

circuit's law respects an incarcerated prisoner's right to bodily privacy, but has found that assigned positions of female guards that require only infrequent and casual observations, or observation at a distance, and that are reasonably related to prison needs are no so degrading as to warrant court interference." *Id.* (citing cases). On the other hand, the Sixth Circuit has "recognized that a prison policy forcing prisoners . . . to be exposed to regular surveillance by officers of the opposite sex while naked – for example while in the shower or using a toilet in a cell – would provide the basis of a claim on which relief could be granted." *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004)(citing *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987); *Cornwell v. Dahlberg*, 963 F.2d 912, 917 (6th Cir. 1992)).

Here, the plaintiff alleges that five (5) or six (6) female correctional officers work at the Marshall County Jail during different shifts. As a result, he claims that each female must work the security control tower at some point during her twelve-hour shift rotation. It is during this time, says the plaintiff, that the female correctional officers have the opportunity to observe any male inmates who are showering. In other words, the plaintiff alleges that it is standard policy at the Marshall County Jail for inmates to be exposed by regular surveillance to officers of the opposite sex while naked. As such, the Court finds that the plaintiff has stated a colorable claim.

### J.     One roll of toilet tissue per inmate per week (Claim 9)

The plaintiff contends that the defendants allocate only roll of toilet tissue per inmate each week and that, when an inmate runs out of tissue, he must use his clothing instead of tissues when defecating, blowing his noise, and so forth.

Although prisoners are constitutionally entitled to the "minimal civilized measure of life's

13

necessities," *Rhodes*, 452 U.S. at 347, the Sixth Circuit has held that temporary inconveniences of the type alleged do give not give rise to Eighth Amendment violations. *Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). In *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999), the Sixth Circuit held that the plaintiff was not subjected to cruel and unusual punishment when prison officials did "not allow[] him to use the toilet, allowing him to sit in his own urine . . . for two 8-hour periods . . . ." *Id.* at 309. Citing *Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir. 1987), the *Hartsfield* court reiterated its 1987 holding in *Stephens* that "deprivations of . . . access to the toilet for a 20-hour period, while harsh, w[as] not cruel and unusual punishment." *Hartsfield*, 199 F.3d at 309. While the aforementioned cases are not precisely on point, they serve to demonstrate that temporary hygienic deprivations similar in effect to the one alleged do not rise to the level of an Eighth Amendment violation. Thus, the plaintiff's claim that one roll of toilet paper per inmate per week violates the Eighth Amendment will be dismissed.

### K. One razor per inmate per week (Claim 10)

The plaintiff alleges that each inmate is only given one disposable, single-blade razor per week for shaving purposes. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety," and that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Williams*, 186 F.3d at 691-92. At most, the plaintiff has alleged a minor inconvenience or discomfort, neither of which rise to the level of an Eighth Amendment violation. *See Rhodes*, 452 U.S. at 347. For these reasons, the plaintiff's claim that the jail provides each inmate with only one razor per week violated his rights under the

14

Eighth Amendment will be dismissed.

### L. No grievance process (Claim 11, as alleged in Amended Complaint, p. 3)

The plaintiff alleges that the Marshall County Jail's grievance board is a fraud and that inmates receive no due process with regard to their grievances or complaints. Specifically, the plaintiff alleges that defendant Patterson consistently fails to respond to inmate grievances.

Although prisoners have a First Amendment right to file grievances, *see Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996), state law does not create a liberty interest in the grievance procedure. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). In other words, a plaintiff cannot premise a § 1983 claim on allegations that the jail's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective jail grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the plaintiff's claim that the Marshall County Jail's grievance process is lacking does not state a claim under the First Amendment.

## V. Conclusion

For the reasons explained above, the plaintiff's § 1983 claims as set forth in Claims 4a, 5, 6, 7, 9, 10, and 11 are facially frivolous or fail to state a claim on which relief can be granted; thus, those claims will be dismissed with prejudice. However, as to the plaintiff's remaining claims, the

Court finds that the plaintiff has stated colorable claims for relief under § 1983. *See* 28 U.S.C. §

1915A(b).

An appropriate Order will be entered.

_____
Todd J. Campbell
United States District Judge